## THE VILA.

### MUNSON v. THE VILA.

### GIERTSEN et al. v. SAME.

(District Court, E. D. New York. September 6, 1894.)

1. SALVAGE—RIGHTS OF CHARTERER—WAIVER.

A provision inserted in a charter party for the charterer's benefit, forbidding the ship to stop to pick up any wreck, or in any way assist or tow any vessel, without an exception even for saving life, amounts to a waiver by the charterer of any claim for salvage earned by the ship by towing in a derelict.

2. SAME—COMPENSATION—DERELICT.

Three thousand dollars, upon a valuation of $8,108.70, allowed to the owners of a steamer for towing into New York, her port of destination, a dangerous derelict found 40 miles at sea, in fair weather, and with a delay of 24 hours.

Goodrich, Deady & Goodrich, for Munson, charterer.

Wing, Shoudy & Putnam, for Giertsen et al., master and crew.

Butler, Stillman & Hubbard and George Cromwell, for cargo.

BENEDICT, District Judge. These two actions are brought to recover salvage compensation for services rendered to the bark Vila and her cargo by the steamer Breidablick on August 30, 1893. The Breidablick was a steamer under charter to the libelant, Munson. At the time of the rendition of the salvage service she was bound to New York, where, upon her arrival, her charter would expire. When nearing New York on her regular course, the Breidablick fell in with the bark Vila, a derelict, about 40 miles from shore, on the afternoon of August 30th. The wind at the time was very light, the sea calm enough to permit the sending of a boat's crew to the derelict. The derelict was found to be apparently sound in her hull, with 24 or 25 inches of water in her. She had a cargo consisting of rags and bones. The Vila's own hawser was taken on board the Breidablick, and the Vila was then towed to New York, where she arrived at the Highlands about 8 o'clock on the night of August 31st, and at 3 o'clock the next morning was anchored off Quarantine, Staten Island. The weather during the time was always favorable, and no damage of any kind was sustained by the steamer in rendering the service. The Breidablick did not deviate from her course, but was detained about 24 hours. The Vila was no doubt in some danger. She was a derelict in the Atlantic ocean. She was, however, leaking but slightly, was in no danger of foundering, and was capable of remaining afloat for an indefinite time. The cargo was not of a perishable nature, and she was in the general track of vessels passing between southern ports and New York, far enough from the shore to be in little danger from that source, and where it was almost certain that she would be sighted in a very short time by some of the numerous vessels at all times passing there. In her condition and position she was a source of danger to other vessels.

The charterer, Munson, has filed a libel, claiming to be entitled to

the salvage. It appears that his charter provided that he should pay port charges, pilotage, agencies, and commissions, the owner providing and paying for provisions and wages, consular, shipping, and discharging fees; and it also contained the following clause: "On account of the perishable nature of the cargoes that this ship is intended to carry, she is not allowed to stop to pick up any wreck, or in any way assist or tow any vessel, especially when by so doing she is liable to be detained." For delay of the steamer 24 hours the charterer paid the shipowner at the charter rate, $68, together with $28 for eight tons of coal. In my opinion, the insertion of such a clause in the charter party amounts to a waiver of any claim for salvage on the part of this charterer, if such claim existed. He made a contract which would prevent the rendition of salvage services, without the merciful exception of a deviation for the purpose of saving life, and he secured to himself a right of action against the shipowner. To that he must be confined. The libel of the charterer is therefore dismissed, and with costs.

No appearance having been entered in behalf of the vessel, and the proceeds of her sale having been eaten up in expenses, the only unsettled qustion is as to the amount of salvage to be paid by the freight and cargo. The freight has been valued at $494.17, and the cargo at $7,614.53. Taking all the circumstances into consideration, I am of the opinion that a suitable salvage compensation for the services rendered in towing in this dangerous derelict would be $3,000. Inasmuch as there has been no appearance for the freight, the whole of the freight, $494.17, may be awarded to the salvors, and, deducting that from $3,000, leaves the sum of $2,505.83 to be paid by the cargo.